[L.A. No. 30332. In Bank. Apr. 20, 1976.]

PATRICK F. MERCIER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
CITY OF LOS ANGELES, Respondents.

Counsel

Lewis & Marenstein, Alan B. Marenstein and Harry B. Green for Petitioner.

Charles P. Scully, Kathryn E. Ringgold and Eugene C. Treaster as Amici Curiae on behalf of Petitioner.

Frank H. Batlin, Philip M. Miyamoto, Thomas J. McBirnie, Charles L. Swezey, Burt Pines, City Attorney, John T. Neville and H. John Wittorff, Assistant City Attorneys, and William G. Lorenzetti, Deputy City Attorney, for Respondents.

## OPINION

CLARK, J.—Petitioner seeks annulment of a workers' compensation award apportioning part of his permanent disability to a prior industrial injury.

In 1970 petitioner, a Los Angeles police officer, suffered an industrial injury to his back. The Workers' Compensation Appeals Board determined that the back disability precluded petitioner from doing "heavy lifting and repetitive bending" and awarded a 34½ percent permanent disability rating.

In 1971 petitioner was found to have suffered an industrially related heart disability occurring over the entire period of employment with the city, 1949 to 1971.

The referee requested the rating specialist to submit a permanent disability rating based on the following: "1. Heart disability and arteriosclerosis, more than slight and less than moderate. Applicant should avoid severe emotional stress. 2. Applicant should be limited to work between light and semi-sedentary. 3. Applicant is precluded from strenuous activities. Apportion out 34½%."

The referee adopted the rating specialist's recommendation, after apportionment, of 40.5 percent disability. Upon petition for reconsideration, the Workers' Compensation Appeals Board affirmed the referee, deciding that the back and heart injuries both prevented petitioner from performing the same type of work. Because they overlapped apportionment was upheld.[1]

---

[1] The board stated: "According to the 'Guidelines for Work Capacity' set forth in the Schedule for Rating Permanent Disability, 'disability precluding heavy lifting, repeated bending and stooping contemplates the individual has lost approximately half of his pre-injury capacity for lifting, bending and stooping.' According to these same guidelines, 'disability resulting in limitation to light work contemplates the individual can do work in a standing or walking position, with a minimum of demands for physical effort', while 'disability resulting in limitation to semi-sedentary work contemplates the individual can do work approximately one-half of the time in a sitting position, and

Petitioner first contends that the two injuries are separate and distinct and are therefore nonapportionable.

Prior to this court's decision in *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902], successive industrial injuries were apportioned only if they were injuries to the same part of the body. (*Pacific Gas & Elec. Co.* v. *Ind. Acc. Com. (Burton)* 126 Cal.App.2d 554 [272 P.2d 818].) We replaced this rigid and mechanistic formula, holding in *Hutchinson* that "the disability resulting from a subsequent injury should be compensable only to the extent that it can be said that the employee's earning capacity or ability to compete has been decreased from what it was immediately prior to the second injury. The computation of this figure cannot be determined by a mechanical application of a method of apportionment based upon whether the injury occurs to the same anatomical part of the body. It must come from a consideration of the nature of the disability caused by the injury. If successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100 percent assigned to 'total' disability. But if the subsequent injury, *even if to a different part of the body,* does not alter the earning capacity or ability to compete in the labor market it is not compensable. And if it does alter these factors, it should be compensable only to the extent of the alteration." (59 Cal.2d 45, 53; italics added.) The policy behind this rule is to encourage the employment of disabled persons by imposing liability on an employer only for that portion of the disability attributable to the subsequent industrial injury. (*Id.,* at p. 49.)

*Hutchinson* thus rejected the inflexible rule of *Burton* substituting one that apportionment is proper when the actual decrease in the employee's ability to compete and earn is less than the sum of the disability ratings for the two injuries added together. The result is that the employee will be awarded that percentage of disability commensurate with his decreased ability to compete and earn. Obviously, the mere occurrence of a second injury does not require apportionment. In each case it must be determined if the second injury impairs the employee's ability to perform work in the same manner as the first injury. If so, apportionment is proper—but only to the extent the two injuries overlap.

---

approximately one-half the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting.' "

*Truck Ins. Exch.* v. *Industrial Acc. Com. (Tarantino)* (1965) 235 Cal.App.2d 207 [45 Cal.Rptr. 178], presented facts almost identical to the present case. The employee suffered injury to his neck, low back and right hand resulting in a permanent disability rating of 31½ percent. Subsequently, the employee suffered a heart attack and was awarded a permanent disability rating of 49 percent. The Court of Appeal reversed an Industrial Accident Commission decision which held the two injuries should not be apportioned solely because they occurred to separate parts of the body. Pointing out there was an overlap in the disabilities, the Court of Appeal held that *Hutchinson* required apportionment.

*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162 [93 Cal.Rptr. 15, 480 P.2d 967], does not lead to a contrary result. In the course of receiving medical treatment for industrial injuries the employee became infected by serum hepatitis. This court held that when the injuries arise out of the same accident section 4750 is inapplicable and apportionment is therefore not required. The court distinguished *Hutchinson* noting that its rule applies to an entirely different situation. "We find nothing in *Hutchinson* which states or intimates that the rule prescribed by section 4750 for *successive* injuries or the procedures approved in *Hutchinson* for rating such injuries, are applicable in the rating of disabilities for a *single* industrial injury." (Orig. italics; *Subsequent Injuries Fund* v. *Industrial Acc. Com. (Rogers)* 226 Cal.App.2d 136, 154.) "Section 4750 was enacted to promote the employment of workmen partially disabled by a prior industrial accident [citation]; that policy is inapplicable to cases involving a single industrial accident. Therefore, the special rating procedures found in *Hutchinson* to be appropriate for multiple accident cases are not applicable here." (*Hegglin* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 162, 173.)

As *Hegglin* pointed out, the distinction drawn between single and multiple accident cases is well-founded. When the two injuries arise out of the same industrial accident the policy underlying *Hutchinson* of not discouraging employers from hiring disabled persons is inapplicable. In such situation, the employer properly is made to bear responsibility for all injuries caused by one accident. When there have been two or more accidents, the policy of encouraging the hiring and retaining of disabled persons is best effected by application of the rule of apportionment enunciated in *Hutchinson*.

Here, the injuries arose out of separate industrial events. In such case, apportionment turns on whether the second injury decreases the

employee's earning capacity or his ability to compete in the open labor market in the same manner as the first. The fact that the injuries occur to two different anatomical parts of the body while relevant, does not in itself preclude apportionment.

■ Petitioner next argues no logical basis exists for concluding that an employee suffering back and heart disabilities is no more disabled than if he had suffered only the heart disability. Petitioner further asserts apportionment denies him a life pension from the city he would have been entitled to had he not suffered the previous disability.

The question of overlapping disabilities is one of fact—not of logic. The basic purpose of workers' compensation is to compensate diminished ability to compete in the labor market (Lab. Code, § 4660, subd. (a)) rather than to compensate every injury. Proper computation of overlapping disabilities—either partial or total—calls for determining the percentage of combined disability and then subtracting the percentage of disability due to the prior injury.[2] (*Dow Chemical Co. v. Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 492 [62 Cal.Rptr. 757, 432 P.2d 365]; *State Compensation Ins. Fund v. Industrial Acc. Com. (Hutchinson)*, *supra*, 59 Cal.2d 45, 53; *Subsequent Injuries Fund v. Workmen's Comp. Appeals Bd. (Royster)* (1974) 40 Cal.App.3d 403, 409-410 [115 Cal.Rptr. 204].) When all factors of disability attributable to the first injury are included in the factors attributable to the second, there is total overlap. We must conclude the rating properly was based on the combined injury. It is clear in this case that the injuries overlapped, and petitioner has failed to show that any disability factor in the first injury was not included in the instructions to the rating specialist.

Petitioner is correct in asserting he is not entitled to a life pension from his employer, but his remedy is to obtain benefits from the Subsequent Injuries Fund. (*Dow Chemical Co. v. Workmen's Comp. App. Bd., supra,* 67 Cal.2d 483, 495; cf. *Subsequent Injuries Fund v. Workmen's Comp. Appeals Bd. (Royster), supra,* 40 Cal.App.3d 403, 407-408.)

The decision of the Workers' Compensation Appeals Board is affirmed.

---

[2] As *Hutchinson* recognized, the injuries from the first accident may heal or improve prior to the second. (59 Cal.2d at p. 56.) In such case the disability percentage to be subtracted would be based on the employee's condition immediately prior to the second injury. In the instant case, no claim of rehabilitation was made.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., and Richardson, J., concurred.

**MOSK, J.**—I dissent.

To merely recite the remarkable conclusion of the majority is to refute it: an employee who suffers a back disability *and* a heart disability is *less* disabled than he would have been if he suffered only the heart disability. Such tortured logic totally eludes me.

This petitioner is a police officer who has served his city since 1949. In May 1970, he sustained a back injury in the course of his employment and as a result was found to be 34½ percent permanently disabled. He continued to work pursuant to a regimen which restricted heavy lifting and repetitive bending.

In August 1971, petitioner sustained a heart injury and arteriosclerosis which rendered him 75 percent disabled. He was directed to avoid emotional stress and to perform only light or semi-sedentary work, and was precluded from all strenuous activities. An employee who is more than 70 percent permanently disabled is entitled to permanent benefits paid pursuant to a formula prescribed by Labor Code section 4659.

It would seem that a police officer who became a heart victim 75 percent permanently disabled would receive those statutorily bestowed benefits without further question. However, the Workers' Compensation Appeals Board ordered the percentage of the first disability to be subtracted from the second. Thus the 75 percent disability suddenly melted down to 40½ percent, and the lifetime benefits provided by section 4659 dissolved completely. The law of diminishing returns became the law of vanishing returns.

In *Hegglin v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 171 [93 Cal.Rptr. 15, 480 P.2d 967], we found the "injury to petitioner's back which prevented him from lifting more than 25 pounds was a factor of disability entirely separate and distinct from the factor of impaired liver function caused by the hepatitis. . . . The injury to the spine and the destruction of liver cells and liver functions obviously involve impairment or abnormalities of separate portions of the anatomy. Furthermore, it is clear that the two factors impose separate limitations on petitioner's capacity to work."

Except for the fact that *Hegglin* involved one, not two, industrial injuries, its analysis of the overlap problem on remarkably similar facts is most persuasive. Indeed, we can by simple substitution relate the circumstances of this case in precisely the terms employed in *Hegglin:* "the injury to petitioner's back which prevented him from heavy lifting and repetitive bending was a factor of disability entirely separate and distinct from the factor of impaired heart function and arteriosclerosis.... The injury to the spine and the damage to the heart and the heart functions obviously involve impairment or abnormalities of separate portions of the anatomy. Furthermore, it is clear that the two factors impose separate limitations on petitioner's capacity to work."

The general rule is properly extracted by the majority from *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902], in this manner (*ante,* p. 714): "apportionment turns on whether the second injury decreases the employee's earning capacity or his ability to compete in the open labor market *in the same manner as the first.*" (Italics added.) But *Hutchinson* does not compel the result reached by the majority.

It should be obvious to any layman that a back injury causing only 34½ percent disability does not affect an employee's earning capacity and ability to compete in the open labor market *in the same manner* as a 75 percent disabling heart attack and arteriosclerosis. The back injury was to the musculoskeletal system, while the heart injury was to the vascular system. For the former the restriction was to avoid heavy lifting, for the latter the avoidance of emotional stress and strenuous activities. After the former injury the petitioner was able to continue his employment as a police officer, after the latter he could no longer do so. Under all these circumstances it is impossible to find "overlapping" disabilities in this case.

I would annul the award.

Petitioner's application for a rehearing was denied June 2, 1976. Mosk, J., was of the opinion that the application should be granted.