[Civ. No. 44130. First Dist., Div. Two. Apr. 24, 1979.]

NONA NUELLE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
EMPLOYMENT DEVELOPMENT DEPARTMENT, Respondents.

240

## COUNSEL

Morgan, Beauzay, Hammer, Ezgar, Bledsoe & Rucka, Alfred Lombardo and M. Michael Rucka for Petitioner.

Charles L. Swezey, Philip M. Miyamoto, Thomas J. McBirnie, Gene Lam, James J. Vonk, Robert M. Jakob, Arthur Hershenson, Frank Evans and Robert A. La Porta for Respondents.

## OPINION

**KANE, J.**—Petitioner employee (hereafter applicant) seeks review and annulment of an opinion and order granting reconsideration and opinion and decision after reconsideration (en banc) issued by respondent Workers' Compensation Appeals Board (hereafter board) on April 20, 1978. Applicant, who sustained successive specific and cumulative injuries to her back over a period of time while working for the same employer, and whose permanent disability was found to be 100 percent, objects to the method used by the board to apportion her total permanent disability. She contends that she is entitled to a pension of $119 a week for the remainder of her life, at the maximum rate applicable at the date of the last injury.

The record shows that applicant, while employed as a farm labor officer for the Employment Development Department at Salinas, sustained three successive injuries to her back. On May 29, 1973, applicant was awarded 13¼ percent and 13¾ percent permanent partial disability for specific injuries occurring on March 5, 1970 (73 SAL 4518) and July 2, 1971 (73 SAL 4519) respectively.[1] Shortly thereafter, applicant filed a petition to reopen both cases for new and further disability,[2] and on April

[1] In case No. 73 SAL 4518, the board found that the specific injury incurred on March 5, 1970, caused permanent disability of 13¼ percent, after apportionment, entitling applicant to 53 weeks of disability payments at the rate of $52.50 per week in the total sum of $2,782.50. In case No. 73 SAL 4519, the board found that the specific injury incurred on July 2, 1971, caused permanent disability of 13¾ percent, after apportionment, entitling applicant to 55 weeks of disability payments at the rate of $52.50 per week in the total sum of $2,887.50.

[2] Labor Code, section 5410, provides: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability. The jurisdiction of the appeals board in such cases shall be a continuing jurisdiction at all times within such period. . . ."

10, 1975, she filed an application alleging a cumulative injury to her back occurring during the period August 1, 1971, through September 6, 1974 (75 SAL 6487). The matters were consolidated for hearing, and on December 9, 1975, the workers' compensation judge found that applicant's condition had steadily deteriorated from the date of the first injury to the date it was found permanent and stationary following the cumulative injury, and that applicant was 100 percent permanently disabled as a result of the successive injuries, attributing one-third of the permanent disability to each injury.

On February 17, 1976, the board granted reconsideration to await the decision in *Wilkinson* v. *Workers' Comp. Appeals Bd.,* then pending before the Supreme Court. The *Wilkinson* decision, issued on May 25, 1977 (19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848]), adopted the doctrine established in *Bauer* v. *County of Los Angeles* (1969) 34 Cal.Comp.Cases 594, the court holding that "whenever a worker sustains successive industrial injuries to the same part of his body while working for the same employer, and these injuries become permanent *at the same time,* the board should render a single award for the combined disability." (P. 496, italics added.)

On February 1, 1978, after reconsideration, the board found that applicant had sustained three injuries to her back while working for respondent employer, and that the issue which remained was whether all three injuries became permanent and stationary *on the same date.* The board noted that prior to the filing of her application for the third and cumulative injury, applicant had received permanent disability awards for her first two injuries in findings and awards filed on May 29, 1973 (see *ante,* fn. 1). The board further noted that those awards were based on the implicit finding that applicant's condition was permanent and stationary, but that the testimony of applicant's treating physician, Dr. Jacob J. Foster, indicated that her condition was *not in fact permanent and stationary prior to December 1974.* The board thereupon made the following findings: "Based on Dr. Foster's testimony, we find that applicant's condition resulting from her first two injuries was not permanent and stationary in March of 1973 at the time of the Findings and Awards in Case [*sic*] Nos. 73 SAL 4518 and 73 SAL 4519, and that her condition continued to worsen *throughout the cumulative injury period* until the time she was declared permanent and stationary by Dr. Foster in December of 1974. (See Dr. Foster's January 7, 1975 report.) We therefore find that the *Wilkinson* criteria are met and applicant is entitled to an award based on the combined disability of 100%." (Italics added.)

The foregoing findings are supported by substantial evidence. First, there was no "previous permanent disability" within the meaning of section 4750 of the Labor Code,[3] as will be illustrated by the Supreme Court's acceptance of the *Bauer* doctrine in *Wilkinson* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d at pages 496-497, as follows: "In *Bauer* the worker incurred successive back injuries while employed by the same employer. Since the combined disability exceeded 70 percent, the worker sought a life pension pursuant to Labor Code section 4659. The employer, however, contended that an award based on the combined disability was barred by the requirement of Labor Code section 4750 that the subsequent injury must be 'considered by itself and not in conjunction with . . . the previous disability.'

"Replying to the employer's contention, the board stated that: 'We are not convinced . . . that Labor Code Section 4750 is applicable to the successive back injuries. . . . [*A*]*pplicant's back disability as caused by both injuries became permanent and stationary on the same date. This being so, in a real sense as to the subsequent injury there was no pre-existing permanent disability.* Therefore, the single disability as caused by both injuries can be combined. . . .' (34 Cal.Comp.Cases at p. 598.) . . .

"The *Bauer* doctrine is consistent with the language of section 4750, which requires apportionment only when the employee 'is suffering from a *previous* permanent disability or physical impairment.' ▆ Thus the section does not require apportionment in all cases of successive injuries, but only in cases of successive permanent disabilities. If the worker incurs successive injuries which become permanent *at the same time,* neither permanent disability is 'previous' to the other, and section 4750 hence does not require apportionment." (Italics partially added.)

▆ Second, no apportionment was proper under section 4663.[4] The long standing rule relating to apportionment under section 4663 is

---

[3]Unless otherwise indicated, all references will be made to the Labor Code.

Section 4750 provides: "Any employee who is suffering from a *previous permanent disability or physical impairment* and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the *previous disability or impairment.*

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no *prior disability or impairment* had existed." (Italics added.)

[4]Section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

contained in *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 799-800 [69 Cal.Rptr. 88, 441 P.2d 928]: " 'A disability resulting from an industrial injury is fully compensable [i.e., without apportionment] even though a preexisting disease increases the disability caused by the injury or interferes with healing and recovery.' " (*Wilkinson* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d at p. 498, fn. 4.)

As the court pointed out in *Wilkinson,* "Before the board can make any apportionment between two injuries, the board must be presented with substantial evidence to show that the normal progression of the earlier injury would cause permanent disability. [Citations.]" (P. 498.) No such evidence exists.

■ Since the facts of this case clearly bring it within the *Bauer* doctrine, approved in *Wilkinson,* we conclude that the board properly found a 100 percent permanent disability.

■ The board nevertheless upheld the judge's method of computation of the total permanent disability award as follows: "Applicant is entitled for her two pre-1972 injuries to an award in each case equal to one-third of the indemnity calculated for 100% permanent disability as well as one-third of the life pension. And, for her post 1974 injury, she is entitled to one-third of the life pension awarded in 100% disability cases. A rating of 100% at pre-1972 rates is equal to an indemnity of $21,000.00, payable at the rate of $52.50 per week for 400 weeks, and thereafter a life pension of $48.46 per week. One-third of the indemnity equals $7,000.00, payable at the rate of $17.50 per week for 400 weeks and thereafter a life pension of $16.15 per week. Under the post 1974 law, 100% permanent disability is equal to an award of $119.00 per week for life. One-third of that award equals $39.56 per week for life."

Applicant petitioned for reconsideration, contending that the manner in which the board had awarded permanent disability violated section 4658 and the rule against apportionment contained in *Wilkinson.* Respondent employer, in its answer, defended the board's method of computation.

On April 20, 1978, the board issued its opinion and order granting reconsideration and opinion and decision after reconsideration (en banc), concluding, after a review of the entire record, that the approach which it

had adopted in its opinion of February 1, 1978, was both sound and equitable.[5]

There is no dispute in the present case that applicant is entitled to a single award for the combined disability. Although respondent employer expresses some doubt whether *Wilkinson* should have been applied at all in light of the prior findings of ratable permanent disability (see conc. and dis. opn. of Richardson, J., pp. 502-504), it is clear that the doctrine applies in rare circumstances where "an employee sustains a second injury to the same part of his body *before the first injury has become permanent.*" (*Wilkinson* v. *Workers' Comp. Appeals Bd., supra,* 19 Cal.3d at p. 501, italics added.) The board's finding that applicant's condition "was not permanent and stationary in March of 1973 at the time of the Findings and Awards [in the first two cases], and that her condition continued to worsen throughout the cumulative period until the time she was declared permanent and stationary . . . in December 1974," is based upon the testimony and reports of applicant's treating physician, Dr. Foster. ██ It is well established that the relevant and considered opinion of one physician may constitute substantial evidence in support of a factual determination of the board (*Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]).

██ The only question before this court, then, is the manner in which the *Wilkinson* rule should be applied in cases in which successive industrial injuries straddle dates on which compensation rates were changed. Because *Wilkinson* involved two post-April 1, 1972, injuries the same rate structure was applicable to both injuries, and the question presented here was not addressed by that court. In the instant case, different compensation rates were in effect at the time of the first two injuries (pre-Apr. 1, 1972) and the third injury (post-Apr. 1, 1974).[6]

The board contends that applicant is confusing the board's apportionment of the *indemnity* with an apportionment of the permanent disability itself. The board argues that apportionment of the indemnity is a consistent and equitable application of the *Wilkinson* principle and is not

---

[5]On May 9, 1978, the board acknowledged a clerical error and corrected the amount of $39.56 to $39.66, the product of dividing $119 by 3.

[6]Section 4658 was amended (Stats. 1973, ch. 1023, § 6), operative April 1, 1974, to provide weekly payments for life for a 100 percent permanent disability. Section 4659, subdivision (b), was added (Stats. 1973, ch. 1023, § 7), also operative April 1, 1974, to provide that "If the permanent disability is total, the indemnity based upon the average weekly earnings determined under Section 4453 shall be paid during the remainder of life."

in violation of section 4658; further, that where pre-1972 injuries and a post-1974 injury are involved, section 4453.5 requires the scheduled indemnity existing at the time of the injury to be applied.[7]

There has been no appellate construction of section 4453.5 since it was enacted in 1972, except for a short footnote reference in *Pascoe* v. *Workmen's Comp. Appeals Bd.* (1975) 46 Cal.App.3d 146, 152 (fn. 3) [120 Cal.Rptr. 199]. However, applicant's total permanent disability resulted from a combination of specific and cumulative injuries,[8] and the "date of injury" differs for specific and cumulative injury cases.[9]

Applicant's argument that she is entitled to the maximum rate applicable at the date of the last injury is grounded upon *Van Voorhis* v. *Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 81 [112 Cal.Rptr. 208]. Van Voorhis claimed benefits for a hearing loss allegedly suffered during employment for a period commencing in 1937 and terminating with his retirement on October 31, 1963, but only discovered to be industrially related on September 7, 1971, eight years after he had retired. Van Voorhis contended that the board erred in computing annual earnings for permanent disability indemnity on the basis of the "date of injury" for purposes of the statute of limitations as set forth in section 5412, rather than on the basis of "the time of the injury" as prescribed by section 4453.[10]

---

[7]Section 4453.5 (added Stats. 1972. ch. 460, § 1) provides: "Benefits payable on account of an injury shall not be affected by a subsequent statutory change in amounts of indemnity payable under this division, and shall be continued as authorized, and in the amounts provided for, by the law in effect *at the time the injury giving rise to the right to such benefits occurred.*" (Italics added.)

[8]Section 3208.1 provides: "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment. *The date of a cumulative injury shall be the date determined under Section 5412.*" (Italics added.)

[9]Section 5411 reads as follows: "The date of injury, except in cases of occupational disease or cumulative injury, is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed."

Section 5412 provides: "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."

[10]The effect of the board's decision was to reduce Van Voorhis' award from $7,560 (36 percent permanent disability predicated upon maximum earnings as of Oct. 31, 1963) to $2,880 for the same period predicated upon minimum earnings as of September 7, 1971.

The court noted that even if the injury were deemed a cumulative injury within the provisions of section 3208.1, a claim for the resulting disability would not be barred under the provisions of section 5412 until the employee either knew or in the exercise of reasonable diligence should have known that the disability was related to his employment.

*Van Voorhis* held that the applicant's compensation "must be measured by the applicant's earning capacity *as it existed at the time he incurred his compensable disability* (§ 4453). Section 5412 only serves to permit him to assert a claim for an occupational disease (or cumulative injury [§ 3208.1]) which eight or more years previously resulted in a compensable disability, because he did not know and in the exercise of reasonable diligence could not have known it was caused by his employment. *Once the compensable disability occurs, the substantive rights of the employee or those claiming under him for that disability cannot be reduced or enhanced.* [Citation.]" (Pp. 87-88, italics added.)

Although the record contains no finding specifying the date or time of injury for the cumulative injury alleged to have occurred during the period August 1, 1971, through September 6, 1975, we may assume from the board's attempt to apportion applicant's permanent disability between the pre-1972 injuries and the post-1974 injury, that the board concluded that applicant incurred compensable disability as a result of the cumulative injury in the post-1974 period, possibly at the time she was advised to stop working because of her condition.

This is clearly a case where the interaction between the injuries would make apportionment of disability impossible or inequitable. As the court pointed out in *Wilkinson,* the *Bauer* doctrine serves to overcome the problem of apportionment in a class of cases in which adequate evidence for apportionment is usually unavailable (19 Cal.3d at p. 499). The difficulties inherent in the board's method of apportionment are illustrated by the board's arbitrary apportionment of one-third of the disability to each of the specific injuries and one-third to the cumulative injury. This apportionment was made despite the fact that permanent partial disability was awarded for the two specific injuries on May 29, 1973, in the amounts of 13¼ and 13¾ percent, respectively, for a total of 27 percent. Since the specific injuries were rated at 27 percent on May 29, 1973, and the record is devoid of evidence that the normal progression of the earlier injuries would have caused total permanent disability, the cumulative industrial injury inferentially caused a major portion, i.e., 73 percent of the total permanent disability, rather than the ⅓ attributed to the cumulative injury by the board.

The foregoing discussion illustrates that the solution to the question raised in this proceeding is not simple. Although *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P2d 449], held that the fact that workers' compensation laws are to be liberally construed does not mean that the legislative mandate of section 4750 is to be ignored, we have pointed out that there is no section 4750 problem in this case. ■ Section 3202, therefore, commands that the relevant statutes be liberally construed by this court with the purpose of extending their benefits for the protection of persons injured in the course of their employment (*Rumbaugh* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 907, 916-917 [151 Cal.Rptr. 563]).

■ Under the board's method of computation, this totally disabled applicant's life pension has been reduced from $119 a week to $71.96 ($16.15 plus $16.15 plus $39.66). Such an unjust result is not commanded by section 4453.5 and is inconsistent with section 4658 and the *Wilkinson* doctrine. We conclude that, under the particular circumstances shown to exist in this case, i.e., where *total* permanent disability results from a combination of successive specific and cumulative injuries to the same part of the worker's body while working for the same employer, and the specific injuries, although the subject of prior permanent partial disability ratings, are found not to be permanent and stationary, and where all the injuries became permanent *at the same time,* applicant is entitled to benefits at the rate applicable at the time the last injury giving rise to such benefits occurred.

The decision of the board is annulled, and the cause is remanded to the board for further proceedings not inconsistent with the views expressed herein.

Taylor, P. J., and Rouse, J., concurred.

The petition of respondent Employment Development Department for a hearing by the Supreme Court was denied July 12, 1979.