[Civ. Nos. 61101, 61110. Second Dist., Div. Two. Apr. 22, 1981.]

LIBERTY MUTUAL INSURANCE COMPANY et al.,
Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
JERRY J. VOLOMINO, Respondents.

266

COUNSEL

Kendig, Stockwell & Gleason, William H. Anderson, Bralley, Bentley & Dickinson, Bralley & Bentley and Charles M. Bentley for Petitioners.

Mallery & Stern, Richard C. Mallery and Lawrence I. Stern for Respondents.

OPINION

**ROTH, P. J.**—Petitioner Liberty Mutual Insurance Company (Liberty) and petitioner Industrial Indemnity Company (Industrial Indemnity) both contend that respondent Workers' Compensation Appeals Board (WCAB) has erred in finding that respondent Jerry J. Volomino (hereinafter applicant) is (1) entitled to combined permanent disability award for all three of his industrial injuries and (2) permanently totally disabled as a result of such injuries. Industrial Indemnity raises the additional contention that the evidence does not support the WCAB's finding that applicant sustained a specific industrial back injury[1] on

---

[1] "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment. ..." (Lab. Code, § 3208.1.)

April 9, 1975. We hold that the WCAB has indeed erred in awarding applicant a combined permanent disability award for all three of his industrial injuries. Petitioners' other contentions, however, are without merit.

### SUMMARY OF WCAB PROCEEDINGS

The matter herein concerns three industrial back injuries sustained by applicant while employed as a route salesman by Stokely-Van Camp and its successor in interest, Bro-Mar, Inc. Liberty insured the employer for purposes of workers' compensation through January 31, 1972; thereafter and through April 9, 1975, Industrial Indemnity was the workers' compensation insurer for the employer.

Applicant sustained his first industrial back injury while employed at Stokely-Van Camp on October 18, 1963. As a consequence of the 1963 industrial back injury, applicant had two surgeries. In 1964 he had a laminectomy and fusion of the L5-S1 interspace with screws inserted. Following the first surgery, applicant had continuing pain, requiring medical treatment, therapy and a low back support. In July 1967 the second surgery was performed; the screws were removed and additional bone was added in an attempt to fuse the spine.

■ ■■■■ In April 1969 applicant's back condition from the 1963 injury was found to be permanent and stationary[2] and ready for permanent disability rating. Applicant was at that time found to be limited to light work; when adjusted for applicant's age and occupation at the time of injury, this resulted in a 52 percent permanent disability rating. As applied to the 1963 injury, pursuant to Labor Code section 4658, each percentage of permanent disability entitled applicant to four weeks of disability payments at the maximum weekly rate of $52.50. (Stats. 1949, ch. 1583, § 1, p. 2833; *Rumbaugh v. Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 907, 912, fn. 8 [151 Cal.Rptr. 563].) At that time for disabilities of 70 percent or more a life pension was also provided (Stats. 1949, ch. 1583, §§ 1, 2, p. 2833; Stats. 1959, ch. 1189,

---

[2]"A disability is considered permanent after the employee has reached maximum improvement, or his condition has been stationary for a reasonable period of time, as may be determined by the Appeals Board or a [workers' compensation judge]," (WCAB Rules Prac. & Proc. (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2) § 10900; see also *Bstandig v. Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 995-996 [137 Cal.Rptr. 713].)

§§ 13, 14, p. 3280.) Accordingly, the 52 percent permanent disability rating provided applicant with 208 weekly payments of $52.50 each in the total amount of $10,920.

Applicant returned to work for Stokely-Van Camp and its successor Bro-Mar, Inc. and was assigned to lighter duties. Nonetheless, applicant sustained a cumulative injury (*ante*, fn. 1) to his back during his employment from April 1970 to and including April 9, 1975. Applicant also sustained another specific industrial back injury on April 9, 1975.

As applied to the cumulative injury and the 1975 specific injury, a different permanent disability payment computation applies. For disabilities of less than 100 percent, instead of 4 weeks of payments for each percentage of disability, Labor Code section 4658 provides that the number of permanent disability payments are determined on a graduated scale whereunder the number of weekly payments increases in proportion to the percentage of permanent disability. (Stats. 1971, ch. 1750, § 5, p. 3776, operative Apr. 1, 1972; *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 4 [128 Cal.Rptr. 673, 547 P.2d 449]; *Aten* v. *Workers' Comp. Appeals Bd.* (1977) 75 Cal.App.3d 113, 117 [142 Cal.Rptr. 42]; *Rumbaugh* v. *Workers' Comp. Appeals Bd., supra*, 87 Cal.App.3d at p. 910.) Further, pursuant to Labor Code sections 4453 and 4658, for the cumulative injury and the 1975 specific injury the maximum weekly permanent disability payment (based upon earnings) for disabilities of less than 100 percent is $70 per week. (Stats. 1973, ch. 1023, §§ 2, 6, pp. 2028-2029, operative Apr. 1, 1974.) Also as applied to the latest two injuries, for disabilities over 70 percent but less than 100 percent, a life pension is provided once the specified number of weekly payments have been made. (Lab. Code, § 4659.) In cases of permanent total disability (100 percent disability), however, for an injury occurring in 1975 the injured worker is entitled to weekly payments for life of up to a $119 per week. (Stats. 1973, ch. 1023, §§ 2, 6, 7, pp. 2028-2030, operative Apr. 1, 1974.)[3]

Herein, the WCAB has found that as a result of his three industrial injuries applicant is permanently totally disabled and that he is entitled to a consolidated permanent disability award for all three injuries of $119 a week for life.

---

[3]As applied to the 1975 specific injury and the cumulative trauma injury ending in 1975, Labor Code section 4658 provides:

"If the injury causes permanent disability, the percentage of disability to total disability shall be determined, and the disability payment computed and allowed, according to subdivision (a). However, in no event shall the disability payment allowed

DISCUSSION

## 1. The Consolidated Permanent Disability Award for All Three Industrial Injuries Is in Error.

be less than the disability payment computed according to subdivision (b).

"(a)

Column 1—Range of percentage of permanent disability incurred:

Column 2—Number of weeks for which two-thirds of average weekly earnings allowed for each 1 percent of permanent disability within percentage range:

| Range of percentage | Weeks |
|---|---|
| Under 10 | 3 |
| 10-19.75 | 4 |
| 20-29.75 | 5 |
| 30-49.75 | 6 |
| 50-69.75 | 7 |
| 70-99.75 | 8 |

"The number of weeks for which payments shall be allowed set forth in column 2 above based upon the percentage of permanent disability set forth in column 1 above shall be cumulative, and the number of benefit weeks shall increase with the severity of the disability. The following schedule is illustrative of the computation of the number of benefit weeks:

Column 1—Percentage of permanent disability incurred:

Column 2—Cumulative number of benefit weeks:

| Percentage | Cumulative weeks |
|---|---|
| 5 | 15.00 |
| 10 | 30.25 |
| 15 | 50.25 |
| 20 | 70.50 |
| 25 | 95.50 |
| 30 | 120.75 |
| 35 | 150.75 |
| 40 | 180.75 |
| 45 | 210.75 |
| 50 | 241.00 |
| 55 | 276.00 |
| 60 | 311.00 |
| 65 | 346.00 |
| 70 | 381.25 |
| 75 | 421.25 |
| 80 | 461.25 |
| 85 | 501.25 |
| 90 | 541.25 |
| 95 | 581.25 |
| 100 | for life |

"(b) Two-thirds of the average weekly earnings for four weeks for each 1 percent of disability, where, for the purposes of this subdivision, the average weekly earnings shall be taken at not more than seventy-eight dollars and seventy-five cents ($78.75)."

Labor Code section 4659 provides as applied to the 1975 specific injury and the cumulative injury: "(a) If the permanent disability is at least 70 percent but less than 100 percent, 1.5 percent of the average weekly earnings for each 1 percent of disability in excess of 60 percent is to be paid during the remainder of life, after payment for the maximum number of weeks specified in Section 4658 has been made. For the purposes of this subdivision only, average weekly earnings shall be taken at not more than one

██ "Where . . . successive injuries to the same part of the body become permanent and stationary at the same time, the worker is entitled to a permanent disability award based upon his combined disability at the permanent disability rates applicable at the time the last injury of the successive injuries giving rise to such benefits occurred. (*Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848]; *Harold* v. *Workers' Comp. Appeals Bd.* (1980) 100 Cal.App.3d 772 [161 Cal.Rptr. 508]; *Fullmer* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 164 [157 Cal.Rptr. 735]; *Taylor* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 139 [156 Cal.Rptr. 906]; *Nuelle* v. *Workers' Comp. Appeals Bd.* (1979) 92 Cal.App.3d 239 [154 Cal.Rptr. 707]; *Rumbaugh* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 907 [151 Cal.Rptr. 563]; *Aten* v. *Workers' Comp. Appeals Bd.* (1977) 75 Cal.App.3d 113 [142 Cal.Rptr. 42]; *Bauer* v. *County of Los Angeles* (WCAB en banc opn., 1969) 34 Cal.Comp.Cases 594.) This principle is often called the '*Wilkinson* rule' after the Supreme Court opinion." (*Norton* v. *Workers' Comp. Appeals Bd.* (1980) 111 Cal.App.3d 618, 625 [169 Cal.Rptr. 33]; fns. omitted.)

Thus, for example, under the *Wilkinson* rule where one back injury occurred when the permanent disability rate was only $52.50 per week and the second back injury occurred when the permanent disability rate was $70 per week, the injured worker is entitled to a consolidated permanent disability award for the total percentage of permanent disability award for the total percentage of permanent disability from both injuries at the $70 per week rate if the two injuries became permanent and stationary at the same time. (*Harold* v. *Workers' Comp. Appeals Bd.* (1980) 100 Cal.App.3d 772, 781-782 [161 Cal.Rptr. 508]; *Fullmer* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 164 [157 Cal.Rptr. 735]; *Taylor* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 139 [156 Cal.Rptr. 906]; *Nuelle* v. *Workers' Comp. Appeals Bd.* (1979) 92 Cal.App.3d 239 [154 Cal.Rptr. 707].) This rule applies even where one of the injuries was previously rated for permanent disability if such injury actually was getting progressively worse until the time of all the injuries became permanent and stationary. (*Nuelle, supra*, 92 Cal.App.3d at p. 246; *Harold, supra*, 100 Cal.App.3d at p. 786.)

Relying on this line of cases and medical evidence that the 1963 injury, the 1975 specific injury, and the cumulative trauma injury all

hundred seven dollars and sixty-nine cents ($107.69).

"(b) If the permanent disability is *total*, the indemnity based upon the average weekly earnings determined under Section 4453 shall be paid during the remainder of life."

became permanent and stationary at the same time, the WCAB has awarded applicant a 100 percent permanent disability at the rates applicable for the 1975 injuries which results in $119 per week for life, with credit for the original award for the 1963 injury issued in 1969.

■ Petitioners object to this consolidated award on the basis that the WCAB lost jurisdiction to, in any way, modify the 1963 award. As petitioners correctly point out, the WCAB has continuing jurisdiction to "rescind, alter, or amend" any of its awards only if steps are taken to reopen the award within a period of five years from the date of injury. (Lab. Code, §§ 5410, 5803-5805.) Here, the award in the 1963 injury case became final in 1969, when the original award in that case issued.

The WCAB relies for its actions upon *Harold v. Workers' Comp. Appeals Bd., supra*, 100 Cal.App.3d 772. There the injured worker, Harold, sustained industrial injuries in 1971 (at which time the permanent disability benefit schedule was the same as in 1963) and 1973 (when the maximum permanent disability rate was $70 per week and the graduated schedule was in existence). The employee had been awarded 4 percent permanent disability for the 1971 injury per award issued in 1972; per the permanent disability rate of $52.50 then in effect, applicant was awarded $840. After the employee sustained the second industrial injury in 1973, she not only filed a claim for that injury but in 1974 timely petitioned to reopen the award for the 1971 injury. In 1975 Harold was found to be 33 percent disabled as a result of the 1973 injury and thus entitled to permanent disability benefits of $9,712.50, payable at $70 per week. As to the 1971 injury, Harold' petition to reopen was granted and she was awarded 32 1/2 percent permanent disability; for the rates applicable for the 1971 injury this resulted in a permanent disability award of only $6,825 payable at $52.50 per week. *At that time it was also found that both injuries became permanent and stationary at the same time on January 7, 1975.*

"After the [1977 Supreme Court] decision in *Wilkinson*, Harold filed a petition to reopen the 1973 injury on October 5, 1977, arguing a change of law, pointing to *Wilkinson*. No petition to reopen was filed with respect to the 1971 injury; as more than five years had elapsed since the injury the [WCAB] no longer had jurisdiction to reopen the case. (Lab. Code, §§ 5410, 5803, 5804.)" (*Harold, supra*, 100 Cal. App.3d at p. 783.)

The court in *Harold* first recognized that the Supreme Court decision in *Wilkinson* established "good cause" to reopen the prior award for the 1973 injury. (*Harold, supra,* 100 Cal.App.3d at p. 775; see also, *Knowles* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 1027, 1030 [89 Cal.Rptr. 356].)

The court in *Harold* found that there existed all the elements for application of *Wilkinson* and the cases following it. The difficulty for the court was that the 1971 injury was not before the court as "When in 1977 Harold sought to reopen the 1973 injury award, the [WCAB's] continuing jurisdiction under Labor Code sections 5803-5805 to reopen the 1971 injury for 'good cause' upon a petition filed within five years of the date of injury had already expired. Thus, the [WCAB's] and this court's jurisdiction is limited to the 1973 injury." (*Id.* at p. 786.) The court observed that "As neither the [WCAB] nor the court has jurisdiction over the 1971 injury, the award therein is final and must be given res judicata effect. [Citation.] To now award Harold 65 1/2 percent permanent disability (the total permanent disability for both injuries) based upon the rates in effect at the time of the 1973 injury would be to ignore the finality of the 1971 injury award (*ibid.*). However, that the 1971 injury award may not now be altered does not prevent the court from applying *Wilkinson,* [and its progeny] *Nuelle, Taylor* and *Fullmer* to the 1973 injury award to the extent possible." (*Harold, supra,* 100 Cal.App.3d at pp. 786-787.) The court in *Harold* therefor applied *Wilkinson* as follows: "As Harold has met all the factual prerequisites for the application of the rule of *Wilkinson* and *Nuelle* she is entitled to 349.5 weekly payments of permanent disability as is provided for a post-April 1, 1972 award of 65 1/2 percent permanent disability. While an award of 32 1/2 percent permanent disability for the 1971 injury is only 130 weeks of payments, the additional 219.5 weekly payments are not for the 1971 injury but for the increased permanent disability as a result of the 1973 injury. Thus, we are not altering the 1971 award in this respect. However, as the 1971 injury award may not be modified the amount of the weekly payments thereunder cannot be adjusted. Accordingly, the first 130 weekly payments may only be $52.50 and the balance of the 219.5 weekly payments are to be $70 per week." (*Harold, supra,* 100 Cal.App.3d at pp. 787-788.)

There is, however, an important fact that distinguishes *Harold* from the present matter. In *Harold* the injured worker within five years of the date of the 1971 injury had filed a petition to reopen the award for such injury. Thus, when the WCAB in *Harold* found that Harold's

1971 injury and 1973 injury became permanent and stationary at the same time the WCAB was still properly exercising its continuing jurisdiction over the 1971 injury. Here, applicant's 1963 injury award became final in 1969, and has never been reopened. Thus, at the time of the filing of the claims for the 1975 specific injury and the cumulative trauma injury, the award for the 1963 injury had long since become final. It was improper for the WCAB to alter the permanent and stationary date for the 1963 injury to bring it up to when the current injuries became permanent and stationary so as to apply the doctrine in *Wilkinson.* Nothing in *Harold* permits the modification of the permanent and stationary date after the WCAB has lost jurisdiction; to the contrary *Harold* demonstrates that the WCAB has exceeded its jurisdiction and failed to give res judicata effect to the now final 1963 injury award.

Accordingly, applicant is not entitled to a consolidated permanent disability award of $119 a week for life as found by the WCAB. Applicant for the 1963 injury may still only receive a permanent disability rating of 52 percent payable at $52.50 for 208 weeks for a total of $10,920. However, as to the 1975 specific injury and the cumulative injury, they may be combined for permanent disability rating purposes pursuant to *Wilkinson* as these two back injuries became permanent and stationary at the same time.

2. Substantial Evidence Supports the Finding of Permanent Total Disability.

 Petitioners contend that substantial evidence does not support the WCAB's finding that applicant is now permanently totally disabled.

 "[J]udicial review of decisions of the WCAB on factual matters is limited to determining whether the decision, based on the entire record, is supported by substantial evidence. ([Lab. Code,] § 5952, subd. (d); *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432])." (*Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158, 162 [151 Cal.Rptr. 666, 588 P.2d 806].) "In this regard it is well established that the relevant and considered opinion of one physician, though inconsistent with other medical opinions, may constitute substantial evidence." (*Market Basket* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 137, 144 [149 Cal.Rptr. 872].)

██ The agreed medical examiner, Marvin Meyers, M.D., has opined that applicant is limited to sedentary work. However, Mickey R. Shintaku, M.D., who was reporting on behalf of petitioner Liberty, opined that applicant was "permanent and stationary and totally medically disabled." Accordingly, based upon the opinion of Dr. Shintaku, the finding of permanent total disability is supported by substantial evidence.

3. The Finding of a Specific Injury on April 9, 1975, Was Proper.

██ Finally, Industrial Indemnity contends that substantial evidence does not support the finding of a specific injury on April 9, 1975, but rather any industrial injury on that date was merely part of the cumulative trauma injury during applicant's employment period from April 1970, through and including April 9, 1975. Industrial Indemnity, of course, insured the employer from January 1, 1972, through April 9, 1975.

In denying reconsideration on this point, the WCAB stated: "Although petitioners Bor-Mar, Inc. and Industrial Indemnity now contend that the evidence does not support a finding of specific injury on April 9, 1975, they stipulated to that injury at the hearing on May 19, 1976, and the stipulation was never rescinded. Moreover, Industrial Indemnity will be allowed ample opportunity, if necessary, to litigate the question of the amount of its contribution in supplemental proceedings for that purpose under Labor Code Section 5500.5 [and at that time the respective liability of Liberty and Industrial Indemnity can be resolved]."

As the WCAB stated in its opinion, Industrial Indemnity stipulated to a specific industrial injury having occurred on April 9, 1975, and it has not shown any good cause for it to be released from said stipulation. (Lab. Code, § 5702; *Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 865-866 [157 Cal.Rptr. 355].) Accordingly, we will not set aside the WCAB's finding of a specific injury on April 9, 1975.

### SUMMARY AND DISPOSITION

The WCAB's decision is in error only insofar as it combines the permanent disability award for the 1963 industrial back injury with the cumulative back injury and the 1975 specific injury. The *Wilkinson* rule may here not be applied to consolidate the permanent disability

award for the 1963 injury and the later two injuries as the WCAB has long since lost any jurisidiction over the 1963 injury. The WCAB, however, may properly apply the *Wilkinson* rule to issue a consolidated permanent disability award for the cumulative injury and the 1975 specific injury as both such back injuries became permanent and stationary at the same time.

The WCAB's decision is annulled and the matter remanded to the WCAB with directions to redetermine the permanent disability award in accord with our decision and the established principles of permanent disability apportionment.

Fleming, and Beach, J., concurred.

The petition of respondent Volomino for a hearing by the Supreme Court was denied June 24, 1981.